Carr, J.
This question has perplexed me exceedingly; and the opinion which I shall now give, is by no means confidently entertained.
At common law, no scire facias lay in personal actions. Where the plaintiff had suffered the year and day to pass without taking out execution, he was driven-to an action of *340 debt on his judgement. To remedy this inconvenience, was one of the objects of the statute of Westm. 2. ch. 45. which gave the scire facias in personal actions, not as a substitute for the action of debt, but as a cumulative remedy. The statute prescribed no limitation of time, after which the scire facias should be barred : but the courts, in regulating the practice, established, that if the judgement were less than seven years old, the plaintiff might sue out a scire facias as matter of course; if more than seven years, but under ten, he could not have the scire facias without a side bar rule; if above ten, and under twenty years old, there must be a motion under counsel’s hand, supported by an affidavit that the judgement remained unsatisfied ; and if the judgement be more than twenty years standing, there must be a rule to shew cause on a similar affidavit. Hardisty v. Barny, Salk. 598. 2 Wms. Saund. 72. f. Where execution had issued within the year, the plaintiff might sue out other executions, at any time, without a scire facias, provided the first execution had been returned and filed, and continuances entered ; but if the first execution had not been returned and filed, though the continuances were entered on the roll, a second execution would be quashed. Thus, in Blazer v. Baldwin, 2 Wils. 82. within a year after the judgement, a fieri facias was sued out, and was continued upon the roll, from easter term 1757 to trinity term 1758, and the defendant being this term taken on a ca. sa. issued upon the judgement, it was moved that this is irregular, there neither being any scire facias to revive the judgement, nor any execution returned by the sheriff, to warrant the entry of the continuances on the roll: the court held that the defendant must be discharged out of custody, and the plaintiff must pay the costs of this application, for that it was irregular to continue an execution on the roll which was never returned or filed.
The statute of Westm. 2. in regard to writs of scire facias, was in force with us, I believé, down to the last revisal of 1819, subject to such modifications as were intro *341 duced by our statutes from time to time. In the revision of 1792, that which stands now as the 5th section of our statute of limitations, was first enacted; it has ever since continued to be law. It is under the last clause of this section, that the case before us arises. The original judgement was obtained in September 1810, and the scire facias was sued in 1826, sixteen years after the judgement; but an execution was sued out in September 1810, and another in 1815, neither of which has ever been returned. Is the statute a bar to the scire facias ? The cause was very well argued; and 1 was strongly inclined to think with the appellee’s counsel, that this scire facias might be maintained, upon the distinction so impressively urged by them, between a judgement on which no execution had issued, and one where execution had been taken out, though it had never been returned. The statute is express, that where no execution has issued, ten years shall bar a scire facias, but it says not a word about a scire facias as applicable to the case where execution has issued, though there has leen no return. Further examination, however, has compelled me to change my first impression, and to believe that this scire facias cannot be sustained. The object of the statute seems clearly to have been, to curtail the cases comprehended by each clause of the section, of some privilege; to limit proceedings on them : and the period it fixes in both cases, is ten years. Where no execution has issued, it makes that period annihilate the judgement. In England, we have seen, the issuing an execution makes no difference, unless it be returned and filed; the judgement is still considered, as if no execution had issued. If our legislature had so considered it, it would doubtless have placed the two cases upon the same ground. But, it is clear to me, the legislature believed, that the execution having gone into the officer’s hands, the judgement would continue alive, though there should be no return, and therefore could not be in need of a revival by scire facias, and indeed could not be the subject of such revival. The words of the law shew this; for they con *342 sider the party in whose favor the execution issued, as . ... , . , . having, though that execution was not returned, the power of obtaining other executions from time to time; and this power he could only have upon the hypothesis, that it was a case neither requiring nor admitting of a scire facias to revive. The law, then, considered the party as in full possession of the right (indefinite as to time) of renewing his executions, and moving against the officer; and these rights (all he possessed over the subject) the statute proceeds to limit to ten years, and to bar after the lapse of ten years from the date of the judgement. From this view of the law, I must conclude that the appellees cannot maintain their scire facias.
Brooke, J. The question is, whether this case is within the provisions of the 5th section of the statute of limitations? The remedies in the two cases provided for in the section (namely, 1. where no execution has issued, and 2. where execution has issued and no return thereon) are as distinctly marked as language could distinguish them. The error in the argument seems to have been in exploring the law as it stood before the statute, instead of attending to its letter and spirit. The 6th section, saving the remedy in cases of disability &c. seems to ascertain and confirm the construction of the 5th section. As the law stood before the statute, a scire facias could not issue after the expiration of seven years, but on a side bar motion, which was ex parte, without notice; and after ten years, without motion in court, on notice; presumption of payment increasing in strength with lapse of time. And, in a case like that before us, the executions, which have been sued out and not returned, would have been considered in the same light as if no execution had issued; Blazer v. Baldwin, 2 Wils. 82. But under our statute, the motions resorted to in the english practice, are dispensed with; and, in the case in which an execution has been sued out and not returned, the liberty to sue out other executions, toties quoties, or to move against the *343 sheriff, is substituted for the remedy by scire facias, or (it may be) other remedies existing before the statute. This, I think, is the law of this case. But cases may occur, as where execution has issued within the ten years, but not returnable till after, and then not returned by the sheriff, or where the party may die under execution after the expiration of the ten years; and, in such cases, the 5th and 6th sections may probably receive a more liberal construction, and other executions may be allowed. The judgement should be reversed.
Tucker, P. The question must, I think, be determined in favor of the appellant.
The proceedings after a judgement may be in three states : 1. There may have been no execution issued whatever, within the year; 2. an execution may have been issued, but not returned; and 3. execution may have been issued, and returned. In the first of these cases, the common law presumed the debt to have been paid or released ; and would not therefore permit the party after the expiration of the year to sue out execution. He was driven to his action of debt. In the second also, the result would seem to have been the same at the common law; for after the scire facias was given, it was determined, that where no execution was returned and filed, no execution could regularly issue without a scire facias, because the execution could not in such case be regularly kept alive by continuances. In the third case, as from the return it must appear whether the debt had or had not been paid, there was no room for presumption, and therefore the execution might be continued down by continuances entered upon the roll for any indefinite time. The form of the entry in these continuances may be seen in Tidd’s Practical Forms, p. 361. and in Lilly’s Entries 500. And these continuances were held necessary, and for want of them a scire facias became essential. 11 Vin. Abr. Execution. O.a. pi. 9. p. 8. 6 Bac. Abr. Scire Vacias. C. p. 107. Blazer v. Baldwin, 2Wils. 82. Barnes’s *344 Notes 213. Yet, as the entry of these continuances was a mere matter of form, and the mere act of the party and the clerk, without the renewed executions ever coming to the hands of the sheriff, it was at length decided, that if a good foundation was laid for them, that is, if there had been within the year an execution actually issued and returned no goods or non est inventus, and filed by the sheriff, the plaintiff might enter the continuances on the roll, even after notice given of a motion to quash the execution on the ground that it was out of date. 2 Barnes’s Notes 172.
The common law having, after the expiration of the year, driven the plaintiff to his action of debt on his judgement, where execution had not issued, or if issued had never been returned, the statute of Westm. 2. ch. 45. was made to facilitate his remedy by giving him the scire facias. Its language was very general; and the proceeding by scire facias was adopted by the judges to carry its provisions into execution. It contained no limitation whatever; so that, at any time, however remote, the defendant might have been vexed by a scire facias, but for the regulations adopted by the courts, and detailed by judge Carr in the opinion just delivered. Our legislature was not content with leaving this matter to the courts. It has provided the absolute bar of a statutory limitation. It has declared, that where no execution hath issued, the plaintiff shall not even have his action of debt or scire facias after ten years. Where execution hath issued, and not been returned, the phraseology of the statute is different; and the gist of the question here, is, what is the true interpretation of this clause ?
By the common law, in this case as well as in the former, we have seen, that the party could only have proceeded, after the year, by action of debt. For he could not enter the continuances on the roll for want of a return, 2 Wils. 82. and the execution ran out of date for want of the continuances. His only remedy, therefore, was a new original (or an action of debt on the judgement) to which after the statute of Westm. 2. was added the scire facias, and to *345 these there was no limitation. For this case also our statute provided a statutory limitation in lieu of the rules of practice adopted by the courts of Westminster. It declares that where execution hath issued and no return is made thereon, the party in whose favor the same was issued, shall and may obtain other executions, for the term of ten years from the date of the judgement, and not after. Now, I understand this clause of the act as an absolute bar to the parties obtaining execution upon the subsisting judgement, in any mode whatever. It may not have taken away the remedy by action of debt, for that did not give the party a new execution upon the old judgement, but it gave him a new judgement. Accordingly it has been held, not to be barred ; Randolph v. Randolph, 3 Rand. 490. But it did bar the obtaining any execution on the old judgement after ten years. Now executions on judgements are obtained in two ways, either by the mere direction of the party, or by the award of the court upon a scire facias ; and the law declares, in general terms, they shall not be obtained after ten years. It, therefore, prohibits their being obtained in any way, either at the will of the party or by the award of the court on a scire facias. This conclusion is rendered inevitable when we consider, that where execution has issued, but has not been returned, the party could not issue another after the year; he was driven to his scire facias; 2 Wils. 82. The statute, therefore, was not necessary to prevent his obtaining execution, at his own pleasure, from the clerk: that he was already prevented from doing, by the judgement having been suffered to go out of date for want of an execution duly returned and filed, and which could be regularly continued down. But it was necessary to prevent his obtaining execution by scire facias ; and this was its effect. If the provision had not this effect, it had no effect; there was no other case for it to operate upon.
It is not easy to perceive why the peculiar phraseology of this clause was adopted, unless we suppose, that there was possibly a doubt in the minds of the committee of re *346 visal of 1792, whether the plaintiff might not have a right to sue out execution at pleasure, where execution had issued though not returned. If so, it is natural they should have used the broad expressions of this clause, as the more narrow language of the first would not have reached the case.
In Randolph v. Randolph, it is said to have been admitted, that a scire facias would lie after ten years, where execution had not been returned, and that the statute in such case is no bar. But this point is taken as a concession of the bar, and does not seem to have been critically examined by the bench. I do not, therefore, feel myself bound by it, as it was unnecessary that it should have been decided; for as the action of debt would have been sustainable upon the judgement in that case, the party was entitled to recover whether the scire facias was barred or not.
Judgement reversed, and judgement entered for the appellant.